845 So.2d 233 (2003)
STATE of Florida, Appellant,
v.
Leo Maurice McCLENDON, Appellee.
No. 4D02-1616.
District Court of Appeal of Florida, Fourth District.
April 9, 2003.
Rehearing Denied April 29, 2003.
*234 Charles J. Crist, Jr. Attorney General, Tallahassee, and Melynda Melear, Assistant Attorney General, West Palm Beach, for appellant.
Carey Haughwout, Public Defender, and Tara A. Finnigan, Assistant Public Defender, West Palm Beach, for appellee.
MAY, J.
The State appeals an order granting the defendant's motion to suppress. We reverse and remand for further proceedings.
Just after midnight on September 21, 2001, a deputy noticed a vehicle parked in the middle of the road. The vehicle did not have its lights on. As the deputy approached, a man who had been standing at the rear of the vehicle got into the passenger seat.
The deputy advised the driver that he stopped to find out why the vehicle was parked in the middle of the road. The passenger responded that he had gotten out of the car to change his shoes. The deputy asked the driver to step to the rear of the car so he could ask him about his license. As he did so, the passenger got out of the car, stood above the hood, and asked what was going on. The deputy could not see one of the passenger's hands, which made him nervous. He feared he might "get shot."
The deputy asked the passenger to get back into the car, which he did. The driver didn't have a license and advised the deputy that it was a rental car. The deputy then asked the passenger for his license and a copy of the rental agreement. The agreement listed the passenger as an authorized driver.
The deputy returned to his car to check on both the driver and the passenger and to contact the rental company. He discovered that the passenger's license was suspended. During this time, a canine unit arrived in response to the deputy's request.
The deputy asked the passenger to exit the vehicle so that the canine could walk *235 around the car. The dog alerted to the car. The deputy placed the two men in the back of his patrol car. He discovered a loaded handgun under the passenger's seat and later discovered cocaine in the air cleaner space under the hood.
The issue raised is whether the police officer's instruction to the passenger to get back into the car constituted an impermissible stop. We hold that under the facts of this case, it did not.
In granting the motion to suppress, the trial court relied upon Wilson v. State, 734 So.2d 1107 (Fla. 4th DCA 1999). Wilson held
that a police officer concluding a lawful traffic stop may not, as a matter of course, order a passenger who has left the stopped vehicle to return to and remain in the vehicle until completion of the stop. The officer must have an articulable founded suspicion of criminal activity or a reasonable belief that the passenger poses a threat to the safety of the officer, himself, or others before ordering the passenger to return to and remain in the vehicle.
Id. at 1113 (emphasis added). The facts of Wilson illustrate the limited nature of its holding.
Wilson was a passenger in a vehicle stopped for a traffic violation. He exited the vehicle and began walking toward a bar located only five to ten feet away. The deputy stopped him from entering the bar and ordered him to return to the vehicle. Thus, the officer's direction did more than secure the area around the vehicle where the investigation was ongoing, it controlled the freedom of the passenger beyond constitutionally permissible bounds. We find the Wilson facts to be distinguishable from those in this case.
In the present case, the officer saw the car parked in the middle of the road without lights after midnight. The officer testified that the passenger got out of the car, leaned on the hood, and asked the officer what was going on. While the defendant testified that he had wanted to go to a nearby gas station, he admitted he neither began to walk in that direction nor advised the officer that he wanted to leave the area of the vehicle. Further, the officer testified that he could not see one of the passenger's hands, which made him fear for his safety.
Under these circumstances, the officer's instruction to the passenger to sit inside the vehicle did not run afoul of the constitution. Using the balancing test articulated in Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), we find the officer's direction to the defendant to have been a "reasonable governmental invasion" of the defendant's "personal security." Id. at 109, 98 S.Ct. 330.
An officer's interest in protecting himself or a fellow officer against an unsuspected assault by a driver or passenger and against accidental injury from passing traffic is both legitimate and weighty and the intrusion into the driver's or passenger's personal liberty is deminimis.
Doctor v. State, 573 So.2d 157, 159 (Fla. 4th DCA 1991), aff'd in part, rev'd in part, 596 So.2d 442 (Fla.1992).
The United States Court of Appeals for the District of Columbia reviewed facts similar to the ones in this case in Rogala v. District of Columbia, 161 F.3d 44 (D.C.Cir.1998). In that opinion, the court concluded "that a police officer has the power to reasonably control the situation by requiring a passenger to remain in a vehicle during a traffic stop, particularly where, as here, the officer is alone and feels threatened." Id. at 53. Indeed, this court in Wilson acknowledged that there *236 would be situations where an "officer should be able to identify objective circumstances that support the reasonableness of his order" for the passenger to return to a vehicle. Id. at 1113.
We therefore reverse the order suppressing the evidence, and remand the case for further proceedings.
STONE, and GROSS, JJ., concur.